UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RUNEE D. PRINCE,

                              Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    10-CV-100S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

        1.      Plaintiff Runee D. Prince challenges an Administrative Law Judge's ("ALJ")

determination that he is not disabled within the meaning of the Social Security Act ("the

Act").   Plaintiff alleges that he has been disabled since March 1, 2007, due to post

traumatic stress disorder ("PTSD"), agent orange, a heart condition, sleep disorder, and

osteoarthrosis.  Plaintiff contends that his impairments have rendered him unable to work.

He therefore asserts that he is entitled to disability benefits under the Act.

        2.      On March 31, 2006, Plaintiff filed a Title II application for disability insurance

benefits.   His application was initially denied on June 28, 2006.   Pursuant to Plaintiff's

request, an administrative hearing was held before ALJ Robert T. Harvey on October 6,

2008, at which Plaintiff appeared by video conference with counsel and testified.   The ALJ

considered the case *de novo*, and on November 4, 2008, denied Plaintiff's application for

benefits.  Plaintiff filed the current civil action on February 8, 2010, challenging Defendant's

final decision.[1]

        3.      On July 12, 2010, the Government and Plaintiff filed motions for judgment on

_____

        [1]The ALJ's November 4, 2008 decision became the Commissioner's final decision in this case
when the Appeals Council denied Plaintiff's request for review.

the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  The Government filed a response on July 29, 2010, and Plaintiff followed suit on August 2, 2010.  Plaintiff then filed a reply on August 16, 2010.  This Court took the motions under advisement without oral argument.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla" and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence

2

may differ from the [Commissioner's]."  <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

6.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Social Security Act.  <u>See</u> 20 C.F.R. § § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.    This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.   If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); <u>see</u> <u>also</u> <u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.    While the claimant has the burden of proof as to the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability (R. at 15);[2] (2) Plaintiff's PTSD is a "severe" impairment within the meaning of the Act (id.); (3) Plaintiff's impairments do not meet the criteria necessary for finding a disabling impairment under the regulations (id. at 16); (4) Plaintiff has retained the residual functional capacity to work in a job with moderate amounts of stress and to lift/carry/push/pull 100 pounds occasionally and 50 pounds frequently, sit 2 hours in an 8 hour day and stand/walk 6 hours in an 8 hour day, but cannot work in areas where he would be exposed to cold (id. at 17); and (5) Plaintiff is able to perform past relevant work as a manufacturing foreman, electronics manager, and title researcher.  (Id. at 17-18).  Ultimately, the ALJ determined that Plaintiff was not disabled, as defined by the Act, at any time through the date of his decision November 4, 2008.  (Id. at 18.)

10.     Plaintiff raises three challenges to the ALJ's decision.  First, Plaintiff argues that the ALJ erred in failing to find Plaintiff's impairment of the right elbow and shoulder to

---

[2] Citations to the underlying administrative record are designated as "R."

be severe.  Second, Plaintiff argues that the ALJ's decision regarding Plaintiff's residual functional capacity was not supported by substantial evidence.  Third, Plaintiff argues that the ALJ did not consider Plaintiff's subjective complaints in light of his work history.

11.     Plaintiff's first challenge is that the ALJ erred in not finding plaintiff's right elbow and shoulder impairment severe.  Plaintiff argues that the ALJ did not even consider this impairment, despite Plaintiff's testimony that the pain was constant and had been present over the last couple of years.  Plaintiff supports his subject symptoms by reference to a March 11, 2008 x-ray, which showed shrapnel fragments were present in Plaintiff's shoulder.

12.     "An impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to basic work activities."  Ahern v. Astrue, No, 09-CV-5543 (JFB), 2011 WL 1113534, at *8 (E.D.N.Y. Mar. 24, 2011) (citing 20 C.F.R. § 404.1521).   Here, the ALJ "carefully considered all the medical evidence of record." (R. at 15) (emphasis added).  The ALJ also specifically noted that "claimant . . . only takes Excedrin for right upper extremity pain" and concluded "the claimant's pain is not as severe as alleged."  (Id.)  The hearing transcript further reveals that the ALJ carefully considered Plaintiff's right elbow and shoulder pain.  The ALJ and Plaintiff discussed the shrapnel in Plaintiff's arms, hip, right hip, face, and jaw, and Plaintiff discussed residual symptoms as a result of that injury.  (Id. at 255.) Plaintiff was asked how often he experienced pain in the right arm, and responded that it only occurred approximately once a week.  (Id. at 261.)  This makes it clear that the ALJ did consider this particular impairment.  See Wavercak v. Astrue, 420 Fed. Appx. 91,

93 (2d Cir. 2011) (finding impairment was considered where ALJ considered combined effects of all impairments and asked about impairment at hearing).  At the very least, the ALJ considered the effects of that impairment, making remand inappropriate.  See Chavis v. Astrue, No. 5:07-CV-0018 (LEK/VEB), 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010) ("Where an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis.").

Moreover, the ALJ's determination that Plaintiff's right elbow and shoulder impairment was not severe is supported by substantial evidence.  "[A]n ALJ may rely on what the [medical] record says, but also on what it does not say."  Johnson v. Astrue, No. 09 Civ. 6017(RMB)(JCF), 2010 WL 5573632, at *11 (S.D.N.Y. Dec. 3, 2010) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983)) (quotation marks omitted).  The only evidence Plaintiff submitted concerning this particular impairment was an x-ray showing the presence of shrapnel fragments and his subjective complaints.  However, a progress note from March 11, 2008 shows that this injury only "sometimes [caused] stiffness and discomfort" and that it "gets better."  (Id. at 240.)  The same note establishes that there was full motion in the right shoulder, no swelling or discoloration, and only mild tenderness.  (Id.)  On the basis of these facts, the ALJ committed no error in determining Plaintiff's right elbow and shoulder impairment to be non-severe.

13.    Plaintiff's second challenge is that the ALJ's determination that Plaintiff could work in a job with moderate amounts of stress, lift/carry/push/pull 100 pounds occasionally and 50 pounds frequently, sit 2 hours and stand/walk 6 hours in an 8 hour day, but not work in areas where he would be exposed to cold was not supported by substantial

evidence.  Plaintiff argues that the ALJ failed to identify the basis for the exertional and nonexertional limitations and that the ALF did not consider Plaintiff's physical impairments. Plaintiff also points out that the ALJ's determinations are contrary to his physical residual functional capacity assessment.  (Id. at 222-27.)  Plaintiff argues that the ALJ's decision is without foundation and thereby constitutes an impermissible medical opinion.

14.     An ALJ making findings on Plaintiff's residual functional capacity must consider objective medical facts, medical opinions and diagnoses based on those facts, and plaintiff's subjective complaints.  20 C.F.R. §§ 404.1545, 416.945.  "An ALJ must specify the functions plaintiff is capable of performing, and *may not simply make conclusory statements regarding plaintiff's capacities*."  Beers v. Comm'r of Soc. Sec., No. 10-CV-1554 (NAM/ATB), 2011 WL 5974686, at *4 (N.D.N.Y. Nov. 10, 2011) (citing Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)) (emphasis in original).  In particular, "[i]n analyzing a treating physician's report, 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." Rosa, 168 F.3d at 79.  Here, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonable be accepted as consistent with the objective medical evidence."  (R. at 17) (emphasis in original).  The ALJ went on to consider Plaintiff's activities of daily living, including his ability to cook, take out trash, shop, do yard work, play golf, travel, hunt, and drive 40 miles a week.  (Id.)  The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (Id.)

This Court also notes that Dr. Harbinder Toor, in June 2006 conducted a physical residual functional capacity assessment of Plaintiff and determined that Plaintiff had no

limitations for any gross and fine motor activities.  (<u>Id.</u> at 100.)  The assessment shows no

exertional limitations.  (<u>Id.</u> at 101-06.)  Moreover, during the hearing the ALJ explored

Plaintiff's work history which supports finding a lack of physical limitations.  From 1974 to

2005 Plaintiff engaged in "light" work, involving lifting an average of 20 pounds or less per

day and being on his feet at least 6 hours during an 8-hour workday.  (<u>Id.</u> at 263-64.)

Plaintiff also testified to having held a job at which he would sit 2-3 hours at his desk.  (<u>Id.</u>

at 265.)  Given this evidence, there was no error in the ALJ's decision.[3]

   Similarly, the ALJ did not err as to Plaintiff's nonexertional limitations.  The ALJ gave

significant weight to the report and opinion of Dr. Rachel Hill who  noted that "claimant has

[PTSD] from Vietnam, but he has done very well with it over the years, and he is likely to

continue to do that in the future."  (<u>Id.</u> at 95.)  Dr. Hill found only that Plaintiff "may have

some difficulty dealing with stress."  (<u>Id.</u>)  This constitutes substantial evidence sufficient

to support the ALJ's finding that Plaintiff could handle a job involving moderate amounts

of stress.

   15.  Plaintiffs final challenge is that the ALJ did not properly assess the Plaintiff's

subjective complaints in light of his work history.  Plaintiff challenges the ALJ's credibility

---

[3]The Court notes that Plaintiff cites to a later physical residual functional capacity assessment completed in August 28, 2007.  In this assessment, Plaintiff is found to have experienced degenerative changes in both knees (R. at 222.)  The assessment further found that Plaintiff could only occasionally lift or carry 20 pounds, and frequently lift or carry 10 pounds.  (<u>Id.</u> at 223.)  Plaintiff was determined to be able to stand/walk at least 2 hours in an 8 hour workday, and sit for about 6 hours.  (<u>Id.</u>)  No limitations were noted on Plaintiff's ability to push/pull.  (<u>Id.</u>)  This assessment contradicts the ALJ's findings.  However, no further information is available about this report.  The disability examiner's signature is unclear and no treating or examining source statement regarding Plaintiff's physical capacity are included in the file.  (<u>Id.</u> at 226-27.)  The parties characterize the report differently.  Plaintiff describes the report as "findings of the Administration."  (Docket No. 6, pp.6-7.)  Defendant, by contrast, refers to this report as the opinion of a lay disability analysis and cites to Program Operations Manual System DI 24510.050(C)(V)(a) that single decision maker completed forms do not constitute opinion evidence.  (Docket No. 8, p. 7.)  Notably, Plaintiff in his reply does not respond to Defendant's argument and exclusively discusses Plaintiff's work history and right elbow/shoulder impairment.  Accordingly, this Court does not find the report sufficient to overcome the substantial evidence supporting the ALJ's residual functional capacity determination.

finding that Plaintiff's hearing testimony did not accurately describe the pain he was experiencing.  Plaintiff also argues that the ALJ was required to consider his work history, but that the ALJ's decision does not do this.

16.     "It is the function of the [Commissioner], not ourselves . . . to appraise the credibility of witnesses, including the claimant." Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983).  Although "a good work history may be deemed probative of credibility . . . . [it] is just one of many factors appropriately considered in assessing credibility." Wavercak v. Astrue, 420 Fed. Appx. 91, 94 (2d Cir. 2011) (quoting Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998)) (quotation marks omitted).

Here, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. at 17.)  Although "[claimant]'s good work history was not specifically referenced in the ALJ's decision [this] does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination." Wavercak, 420 Fed. Appx. at 94.  The ALJ did consider Plaintiff's descriptions of his activities in daily living and found, on this basis, that Plaintiff's description of his symptoms was not credible.  The ALJ was well-aware of the Plaintiff's work history, having discussed the various positions Plaintiff held during the hearing.  Thus, there was no error in the ALJ's credibility assessment.

17.     After carefully examining the administrative record, the Court finds that the ALJ sufficiently developed the record.  Furthermore, the Court finds that substantial evidence supports the ALJ's decision in this case, including the State agency physician's medical opinions and Plaintiff's testimony.  This Court is satisfied that the ALJ thoroughly examined

the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act.  Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 4) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:   December 17, 2011
            Buffalo, New York


                                                    /s/William M. Skretny
                                                   WILLIAM M. SKRETNY
                                                        Chief Judge
                                                 United States District Court